Paul King

801 S Miami Ave #1401

Miami, FL 33130

Pablopicassojustice@gmail.com

850-545-3355

FILED BY ____ D.C.

DEC 27 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

SOUTHERN DISTRICT COURT OF FLORIDA

| PAUL KING | Case No.: |
|---|---|
| Plaintiff, | |
| vs. | FRAUD: INTENTIONAL MISREPRESENTATION |
| RAZBUTON INC, A CORPORATION; | THEFT |
| MICHAEL KING, AN INDIVIDUAL; | BRIBERY, RACKETEERING |
| SOPHIA KING, AN INDIVIDUAL; | WRONGFUL DEATH |
| MARVIN ERICKSON, AN INDIVIDUAL; | TRESPASSING, HOLDING OVER |
| KELLEY KRONENBERG, A CORPORATION; | |
| MARC BROWN PA, A CORPORATION; | |
| DEFENDANTS | |

I. JURISDICTION AND VENUE

1. Plaintiff Paul King has at all times of these claims been a resident of Miami-Dade and these complaints come against individuals and corporations under 18 US Code 96 Racketeering.

II. CLAIMS

1. Razbuton Inc ("Razbuton") had their land, comprising approximately 33 acres, listed for $2.89M and included the business entity Razbuton Inc. Plaintiff was interested to

KING V RAZBUTON COMPLAINT 1

buy the land and told Marvin Erickson ("Erickson") that he could put $1M down and then refinance the seller financed balance through a bank within a few months time. Due to fraud orchestrated by family members Sophia King (Plaintiff's mother) and Michael King (Plaintiffs brother) ("S King, M King), the closing ended up being for $3.3 Million, and did not include Razbuton Inc in the sale, which had the business income history needed by the bank to refinance the loan.

2. In addition, loan term due dates were changed and impossible to obtain insurance policies were added. The attorneys that were supposed to be representing Plaintiffs interests, Kelley Kronenberg ("Kelley") and Marc Brown PA ("Brown"), were instead bribed by family members S King and M King to do the opposite and put pressure on Plaintiff to close on terms he was not comfortable with while holding the $1M deposit as ransom – threatening Plaintiff that he would likely lose it if he did not close. Closing occurred in the name of a corporation, SHW17 Inc, and was signed by Sophia King, where it was supposed to be in Plaintiffs name and signed by Plaintiff as all funds came from Plaintiff.

3. Closing occurred in November 2020. Balloon payments of approximately $1M should have been due on the 12 month and 24 month anniversary of the closing date. Instead, closing documents signed by Sophia held July as the first balloon payment where the larger chunk of $1.3M was due.

4. Erickson had his employees live on the property after the sale was completed against Plaintiffs wishes, leading to the untimely death of Plaintiffs golden retriever.

5. Erickson left items behind, including a trailer where a suicide had occurred in early 2021, along with drug paraphernalia.

KING V RAZBUTON COMPLAINT 2

6. Lumber and steel worth over $50,000 that were promised and labeled to be part of the closing were removed at the last minute and Plaintiff had to purchase it instead from Erickson.

7. Lumber and steel purchased for over $100,000 from Industrial Lumber by Plaintiff was stolen from the premises. Plaintiff believes Erickson stole the lumber and steel.

8. In August 2020, Razbuton filed for foreclosure. SHW17 hired three sets of attorneys and paid them all retainers in order to answer and file a counterclaim. None of the attorneys managed to file anything, leading to a pending foreclosure sale set for January 4, 2022. To stop the foreclosure proceeding, Plaintiff filed a quit claim deed to transfer ownership to himself; Plaintiff filed answers himself, alleging fraud and stating the claims. However, they were stamped by the Court prior to the foreclosure hearing, though they never made their way to the Court docket, and the sale still remains pending for January 4th, 2022.

III. PRAYER FOR RELIEF

1. For the purchase of the property: Plaintiff seeks for the deal to be unwound to the original deal, where Razbuton Inc is part of the sale and the entity is transferred to Plaintiff; the sale price is $2.89M; and Paul King individually is the purchaser of the property. Plaintiff seeks punitive damages against Erickson, S King, M King, Kelley and Brown. If the foreclosure sale occurs then Plaintiff seeks compensatory damages of the $1M paid to Razbuton plus over $300,000 invested into the property since closing plus punitive damages.

2. For the lumber and steel rescinded and the lumber and steel stolen, compensatory damages of $150,000 against Erickson and Razbuton.

KING V RAZBUTON COMPLAINT 3

3. For items left behind, compensatory damages as per the holding over clause of the lease agreement, believed to be over $170,000, to be shown in Court against Erickson and Razbuton.

4. For wrongful death, punitive damages as the Court deems appropriate against Erickson and Razbuton.

5. For bribery and racketeering by S King, M King and attorneys Kelley and Brown, punitive damages as the Court deems appropriate.

IV. EVIDENCE

1. The 8/16/2021 foreclosure complaint filed by Razbuton (Exhibit 1).

2. The 11/23/2021 final judgment of foreclosure in favor of Razbuton (Exhibit 2).

3. The 11/17/2021 claims submitted by Plaintiff the day prior to foreclosure hearing that never made it to the docket (Exhibit 3)

4. The Exhibits (Exhibit 4) corresponding to 11/17/2021 claims submitted by Plaintiff, including:

    a. Nursery most recently listed for Sale for 2.89M includes Razbuton Inc

    b. Email regarding stolen lumber

    c. The lease agreement and holding over clause #29

    d. M King email to Plaintiffs partner

    e. Nursery listed for sale prior, includes Razbuton Inc

KING V RAZBUTON COMPLAINT 4

    f.   Texts between Plaintiff and Industrial Lumber regarding Erickson's statements of pre-meditated foreclosing on Plaintiff

    g.   Mortgage Note

    h.   Mortgage and Security Agreement

By: Paul King

12/27/2021

*[signature]*

801 S Miami Ave #1401

Miami, FL 33130